Mason, Appellant, vs. Bradley and another, Respondents.

*March 16 — April 25, 1889.*

*Evidence: Instructions to jury: Sale on commission: Counterclaims.*

1. The question being as to the price at which the defendants' berries were sold by the plaintiff on commission, it was error to admit evidence as to the price offered by the plaintiff to another person for other berries.
2. In an action to recover an overpayment made by plaintiff to defendants on goods sold by him for them on commission, the defendants counterclaimed for labor performed upon such goods. The court charged the jury that the defendants were not entitled to any pay for such services, "unless they were performed pursuant to an agreement by the plaintiff to pay them therefor." Defendants had not claimed that there was any such agreement. *Held*, that such charge was misleading.
3. Where counterclaims had been abandoned and withdrawn, an instruction calling the attention of the jury to them as proper deductions from anything they might find due the plaintiff, was erroneous.

APPEAL from the Circuit Court for *Portage* County. The case is stated in the opinion.

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

For the respondents the cause was submitted on the brief of *James O. Raymond*.

ORTON, J.    The plaintiff was a commission merchant in Chicago, Ill., and the defendants owned a cranberry marsh in Wisconsin.   In the fall of 1885 the defendants agreed to ship to the plaintiff their crop of cranberries of that season, to be sold by him on commission.   The plaintiff was to advance to the defendants money to aid them in picking the berries, and furnish them boxes and barrels to ship them in, and to pay the freight and cartage charges thereon, and to account to the defendants for the net proceeds thereof, less the cost of said boxes and barrels, the freight and cartage charges, and ten per cent. commission for selling them.   The plaintiff made such advancements and furnished the boxes and barrels, and the defendants shipped to him from time to time about 666 barrels of berries, in gross, and mostly uncleaned, and the plaintiff paid them in all the sum of $949.19, in money, goods, boxes, and barrels, and berries returned.   The plaintiff accounted to the defendants as for the gross proceeds of the sale for the sum of $876.44.   To be deducted therefrom are the freight and cartage charges of $156.09, and commissions, $87.64.   This action is brought to recover the overpayment of $321.88.

The defendants admit in their answer the above payments, and the plaintiff admitted in his testimony the gross quantity of cranberries shipped and received, as stated in the defendants' answer.   The defendants counterclaimed for work and labor in cleaning the berries and getting them ready and suitable for market, performed at the plaintiff's warehouse in Chicago, $160, and for boxes left with the plaintiff in his warehouse, $79.13.   The only con-

tested issues were the quantity of berries actually sold by the plaintiff, and the price at which they were or ought to have been sold, and these counterclaims.

It appears that some of the berries were decayed and otherwise unmarketable, and that most of them were mixed with vines, leaves, and grass as they were picked and packed, and had to be cleaned and assorted at Chicago, and made suitable for market; and that there was a diminution of their original bulk when shipped, by their settling down in the boxes and barrels by carriage. It is proper to say that in our opinion the plaintiff sustained his accounting as above by at least a great preponderance of testimony, although the judgment may be reversed for errors other than upon the merits of the main controversy. The plaintiff sustained his accounting by his own testimony, corroborated by his books of account and by the testimony of his clerks and others cognizant of the quantity of berries sold and the price at which they were sold, and the testimony was overwhelming that they were sold on the most advantageous terms possible. On the other hand, the defendants did not know and could not have known as well what the net quantity of the berries was after they were cleaned and assorted and made suitable for market, and they had no witnesses who did know or testified on these questions anything conclusive against the correctness of the above accounting. It is a little surprising that the jury should have had any trouble with the main case.

The first error committed was allowing the witness Elizabeth Warner to testify to the proposition of the plaintiff by letter to her, to purchase her berries that season for $5.50 per barrel. That testimony could have had no possible bearing upon the question of the price at which the defendants' berries were sold by the plaintiff, and yet the jury might have thought, from the admission of it against the objection of the plaintiff, that he ought to be charged

at that rate for the berries of the defendant which he sold. The defendant *Loring Bradley* had already testified as a witness that " he did not wish the jury to understand that the plaintiff sold their berries at a lower figure than the market price at the time, and that he did not know but what he sold them for all the market would warrant, and that he found no fault with the sales that the plaintiff made."

The second error was in the court's adding, after the instruction to the jury that the defendants' services in cleaning and repacking the berries at Chicago, for the purpose of making them salable and merchantable, were performed upon their own property, the clause, " unless they were performed pursuant to an agreement by the plaintiff to pay them therefor." There was no such agreement whatever, and none was claimed to have been made, and such an agreement would have been most unreasonable and preposterous, as well as without the least consideration; and yet the jury might have been diverted from the real issue to look for such an agreement, and perhaps to imply one from the facts and circumstances. There was evidence that the plaintiff employed one of the defendants to clean and assort a small quantity of certain other berries which belonged to himself, but that had nothing to do with this transaction, and those services are not counterclaimed in this action, and therefore the jury might have been confused by this instruction. *West v. Wells*, 54 Wis. 525.

The jury were unable to agree upon the main issue, and came into court for further instructions and to hear the testimony read to them. The court, having instructed them further upon the main issue, and having stated the net proceeds of the berries sold and the payments made in money and goods, and the difference of $321.88 for which the jury should render a verdict for the plaintiff if they should find his account of the berries correct as to amounts and prices

received, added this proviso: "Provided, of course, that the *Bradleys* are not entitled to any credit for those matters they set up as counterclaims. You remember that they charge for boxes, and they claim they rendered 160 odd dollars' worth of services, etc., all of which should come out of it in any event." This last instruction was excepted to by the plaintiff's counsel. The jury, having again retired, agreed upon and returned the verdict of "No cause of action;" or, in substance, for the defendants. This instruction was the most fatal error of them all, and most probably prevented a verdict for the plaintiff. As to the counterclaim of $160 for services in preparing their own berries for market, and of $79.13 for the boxes left by the defendants with the plaintiff or in his warehouse in Chicago, the defendant *Loring Bradley* testified that "he did not ask the plaintiff to pay for that labor of sixty or seventy days in taking care of their own berries," and that "they did not need the boxes and did not call for them at the time, that they had not been there to claim them, and that after they got through they merely left them there." At the close of the defendants' testimony, the plaintiff's counsel moved to strike out the counterclaim for the boxes, and thereupon the defendants withdrew the same. After all this, the above instructions must have been an inadvertence or oversight of the court. The attention of the jury was particularly called to these two items of the counterclaim as being a proper deduction from any balance they might find due to the plaintiff, and they probably made such a deduction. If one of the defendants had not testified that they did not ask the plaintiff to pay for that labor, and that they merely left the boxes there and had not been there to claim them, and if the claim for the boxes had not been withdrawn, both claims were intrinsically preposterous and absurd. The defendants performed such labor for themselves and on their own account, and the plaintiff never owned or claimed to

own the boxes, or refused to deliver them up to the defend-
ants. The defendants owned them, and used them in their
own business, and merely left them when they got through.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause remanded for a new trial.